UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JOSEPH MAHER,                       )
                                    )
       Plaintiff                    )
                                    )
v.                                  )   Docket No. 04CV-12367-EFH
                                    )
GSI LUMONICS, INC.,                 )
                                    )
       Defendant.                   )
_____)

**DEFENDANT GSI'S CONCISE STATEMENT OF MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant states that the following facts are material and undisputed for purposes of its Motion for Summary Judgment. The facts stated in sections A-B were found true in the Court's Memorandum and Order dated April 9, 2004 granting GSI summary judgment on the federal counts in *Maher I* (Civil Action No. 03-CV-10187-EFH) (attached as Ex. A). As stated in the Motion and Memorandum submitted herewith, this action is barred by the doctrine of res judicata and, in any event, Defendant is entitled to judgment as a matter of law:[1]

    A.    **CONCISE STATEMENT**

---

[1] The factual findings of Judge Harrington in his *Memorandum and Order* (Ex. A attached hereto) dated April 9, 2004 are res judicata. As to any additional facts alleged herein with respect to the severance negotiations (sections D and E herein), the Defendant assumes that the facts stated herein are true and undisputed solely for purposes of this Motion for Summary Judgment.

1. At age 53, Plaintiff Joseph Maher was hired on or about May, 2001 as General Manager of GSI Lumonics Inc.'s Semi-Conductor Division. <u>Maher Tr.</u>, 44 (Tab A List of Exhibits in Support of Motion for Summary Judgment).

2. Charles Winston (age 60), President and CEO of GSI Lumonics, made the decision to hire Maher. <u>Winston Tr.</u>, 17 (Tab B).

3. Maher reported directly to Winston. <u>Winston Tr.</u>, 18 (Tab B).

4. Winston (age 61) terminated Maher (age 54) on September 13, 2002, (approximately 16 months after hire) for insubordination because Maher abruptly walked out of a special executive meeting while Winston was speaking. <u>Winston Tr.</u>, 72-73 (Tab B).

5. Winston replaced Maher with Nino Federico, age 52. <u>Palmer Aff.</u>, ¶6 (Tab D); <u>Maher Tr.</u>, 211 (Tab A).

**B.    June Review of Maher's Performance**

6. In June, 2002, Maher was given a performance review which, among other things, expressly stated that he needed to improve his "poor" working relationship with Winston which relationship was "strained". <u>See</u> <u>Winston Tr.</u>, <u>Maher's Review</u>, *Exhibit 7* (Tab B). Maher admits that the relationship was strained, and during his deposition stated that after the review "he tried not to be argumentative with the President." <u>Maher Tr.</u>, 104 (Tab A).

7. Maher admits that he had conversations with Winston where he was "passionate and excited", and that he had follow-up discussions with Winston about his conduct being abrasive and argumentative. <u>Maher Tr.</u>, 111, 168 (Tab

A). When describing "passionate" and "excitable," Maher states that he would talk loud and fast, and maybe slam a door now and then. Maher Tr., 105, 167 (Tab A).

### C. Termination Of Maher

8. On September 7, 2002, approximately sixteen months after Winston hired Maher, Winston decided to terminate Maher effective, September 13, 2002, when Winston would be in Massachusetts. See Winston Tr., September 7, 2002 E-mail to L. Palmer, *Exhibit 9* (Tab B).

9. On the day before, September 6, 2002, Maher had abruptly walked out of a special executive tele-conference meeting called by the President to discuss performance of the Semi-Conductor Division, of which Maher was the Vice President, General Manager. The President, in California, was speaking when Maher walked out of the meeting which Maher and two other executives – Thomas Swain (age 57) and Al DaSilva (age 51) – were attending in a conference room. Maher Tr., 213 (Tab A); Winston Tr., 68 (Tab B); Palmer Tr., 59, 60 (Tab C).

10. In his deposition, Maher stated that he walked out of the meeting because the President was on his "soap box," and Maher had "pretty much had enough that day." Maher Tr., 180 (Tab A).

11. After the meeting, DaSilva told Maher that the President was upset about Maher's conduct on September 6th. Maher Tr., 193 (Tab A).

12. On September 10, 2002, Maher sent the following e-mail to Winston:

> After reflecting on last Friday's meeting I realized *that I was totally out of line and let my emotions get the best of me.* There is no good excuse for my abrupt departure from the meeting so I won't try to make any, I will only humbly ask that you accept my apology and my guarantee it won't happen again.

See Document Bates-Numbered GSI 0340 (Tab E) (emphasis added).

13. The president did not reconsider the termination decision which he made on September 7, 2002. Winston Tr., 74 (Tab B).

14. According to Winston, this was Maher's second such act of insubordination since his review. Winston Tr., 67-68; see also, Maher Tr., Termination Memo dated September 13, 2002, *Exhibit 5* (Tab A). Although Maher does not recall the prior incident when he hung up on Winston during a telephone conversation, he does not deny that it could have happened. Maher Tr., 106 (Tab A).

### D. OFFER OF SEVERANCE

15. After Winston met with Maher on September 13, 2002 to terminate him, Linda Palmer, Vice President of Human Resources, met with Maher to present an offer of severance. Maher Tr., 203-204 (Tab A)

16. Such Severance Offer allowed Mr. Maher 45 days to consider the offer, and seven days to revoke after signing. It also advised him to consult with

counsel.  See Maher Tr., September 13, 2002 offer of severance, *Exhibit 11* (Tab A).

17. On September 18, 2002, Maher sent an email to Winston and Palmer requesting that the severance be increased from three to six months.  Maher Tr., *Exhibit 10* (Tab A).

18. Such demand was rejected.  Palmer Tr., September 30, 2002 e-mail to Joseph Maher, *Exhibit 18* (Tab C).

19. Although Maher had terminated people while employed by GSI, Maher admits that he is not aware of any occasion in which the Company had changed its original severance offer.  Maher Tr., 55, 58 (Tab A).

20. On September 18, 2002, Maher informed Palmer that he did not have the entire severance package, and Palmer faxed him another copy.  See Palmer Tr., September 30, 2002 e-mail string between Palmer and Maher, *Exhibit 18* (Tab C).

21. On September 30, 2002, Palmer assured Maher in writing that if he earned any bonus under the 2002 bonus matrix, it would be paid under the severance agreement after the year end audit was complete.  See Palmer Tr., September 30, 2002 e-mail string between Palmer and Maher, *Exhibit 18* (Tab C).

22. In accordance with the bonus plan, on March 7, 2003, Maher was paid a net bonus of $10,930.95.  Maher Tr., March 10, 2003 letter providing payment under incentive plan, *Exhibit 7* (Tab A).

E.   **MAHER'S RETENTION OF COUNSEL AND FAILURE TO TIMELY ACCEPT SEVERANCE**

23.   On or before October 8, 2002, Maher retained legal counsel. Complaint, ¶ 29. In response to Counsel's request, on October 16, 2002, GSI provided plaintiff's personnel file and other information to his counsel. See letter to Maher's counsel from GSI's in-house counsel, Bates-numbered document GSI 0050 (Tab F).

24.   GSI's severance offer expired by its terms at the latest on November 4, 2002[2]. See Maher Tr., offer of severance, *Exhibit 11* (Tab A).

25.   At all times prior to November 4, 2002, Plaintiff admits that he understood that if he earned any bonus, that it would be paid under the agreement. See November 8, 2002 e-mail from Maher's counsel to GSI's in-house counsel, bates-numbered document GSI 0053 (Tab G).

26.   By letter dated October 23, 2002 mailed to GSI, Plaintiff's counsel requested an additional 45 days, from November 4, 2002 up to December 20, 2002, to consider the offer made to Maher on September 13, 2002. (Complaint, ¶31)

27.   GSI did not grant the request for extension. See Plaintiff's Opposition to Motion to Dismiss, at 5.

---

[2] Based on either the initial September 13, 2002 offer or the September 18, 2002 re-fax of such offer, the 45-day period for accepting the severance offer expired earlier than November 4, 2002. For purposes of this Motion, however, Defendant will assume that the offer of severance expired on November 4, 2002.

516483                                                  6

28. Plaintiff did not accept the offer on or before November 4, 2002, prior to its expiration by its express terms. Maher Tr., 220 (Tab A).

29. Maher commenced administrative proceedings before the MCAD and EEOC, and filed the suit. Complaint, ¶ 39.

E. **Summary Judgment in *Maher I***

30. On April 9, 2004, this Court granted summary judgment in favor of GSI on all federal counts in *Maher I*, including the count alleging violation of the Age Discrimination in Employment Act, violation of the Older Workers Benefit Protection Act, and retaliation in violation of the ADEA for alleged exercise of protected rights.

31. The Court declined to exercise jurisdiction over the two state law claims, which alleged violation of the Massachusetts age discrimination statute (M.G.L. c. 151B) and violation of the "covenant of good faith and fair dealing" in connection with the severance negotiations.

32. After declining to exercise jurisdiction over the state law claims, Judge Harrington sent the case to the Essex County Superior Court, as if the case were on remand.

33. After a hearing on June 29, 2004, Judge Billings sitting in the Essex County Superior Court dismissed the case because the case was not properly before the Court because a "remand" was not proper. The case had not originated in the state court initially.

34. Plaintiff filed a second suit in The Massachusetts Superior Court in Essex County on or about August 27, 2004, (Maher II). The Complaint was served on Defendant GSI in or about October, 2004.

35. Based on this court's diversity jurisdiction, Defendant removed Maher II to federal court on November 8, 2004.

36. The Complaint in Maher II asserts three state counts against GSI, his former employer: Count I, alleging age discrimination under state law; M.G.L. c. 151B; Count II, alleging Breach of the Covenant of Good Faith and Fair Dealing arising out of the severance negotiations; and Count IV, alleging violation of unspecified "public policy."

37. It is undisputed that such counts, or variations thereof, were asserted in Maher I. See Joint Statement of the Parties at 2 (Filed with the Court on January 4, 2005).

                                                    Respectfully submitted,
                                                    **GSI LUMONICS, INC.,**
                                                    By its attorneys,

                                                    _/s/ Debra Dyleski-Najjar_____
                                                    Debra Dyleski-Najjar, BBO #366730
                                                    Doreen M. Zankowski, BBO #558381
                                                    HINCKLEY, ALLEN & SNYDER LLP
                                                    28 State Street
                                                    Boston, MA 02109
Dated: February 7, 2005                     Phone: (617) 345-9000

## CERTIFICATE OF SERVICE

I, Debra Dyleski-Najjar Esq., hereby certify that on the 7th day of February, 2005, I caused a copy of the foregoing to be served electronically, on Martha Wishart, Esquire via ECF.

                                                                                /s/ Debra Dyleski-Najjar_____
                                                                                Debra Dyleski-Najjar