# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JOSEPH MAHER,
                Plaintiff

            v.                                 CIVIL ACTION NO.:
                                                   03-10187-EFH

GSI LUMONICS, INC.,
                Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM AND ORDER

April 9, 2004

HARRINGTON, S.D.J.

      The Plaintiff Joseph Maher ("Maher") sued his former employer, GSI Lumonics, Inc. ("GSI"), for violating various federal and state age discrimination laws. GSI moved for summary judgment. This Court grants summary judgment as to Maher's federal claims and declines to exercise jurisdiction over his state law claims.

I.     BACKGROUND

      The undisputed facts, considered in the light most favorable to Maher and with all reasonable inferences drawn in his favor, are as follows. See Kosereis v. Rhode Island, 331 F.3d 207, 209 (1st Cir. 2003). In April, 2001, Maher applied for a job at GSI and was subsequently interviewed by the company's President, Charles Winston ("Winston"), and Vice President of Human Resources, Linda Palmer ("Palmer"). During the interview, Maher told Palmer that he was considering retirement and

was not actively looking for a job. In May, 2001, Maher was hired as a General Manager of GSI's semiconductor division. Maher was 53 years old at the time. Winston was Maher's direct supervisor, and the relationship between the two men soon soured. In June, 2002, Winston wrote in Maher's performance evaluation that he was concerned "over the poor working relationship between us." Palmer also spoke with Maher about the need to improve his relationship with the president.

On September 6, 2002, Maher attended a meeting with Winston and two other executives to discuss the semiconductor division. Winston participated in the meeting by telephone. Maher testified at his deposition that he "pretty much had enough that day" and decided to abruptly leave the meeting because Winston was giving "one of his soap-box presentations." The meeting ended when the two executives informed Winston that Maher had left. The next day, Winston decided to fire Maher and instructed Palmer to begin preparing a termination notice. Several days after the meeting, Maher wrote an e-mail to Winston apologizing for leaving the meeting. Maher stated: "I realize that I was totally out of line and let my emotions get the best of me. There is no good excuse for my abrupt departure from the meeting so I won't try to make any, I will only humbly ask that you accept my apology and my guarantee it won't happen again." Winston fired Maher on September 13, 2002. Maher was 54 years old at the time. Maher was ultimately replaced by a person 52 years old.

II.    DISCUSSION

Put plainly, "[s]ummary judgment for the defendant[] is appropriate when the evidence is so one-sided that no reasonable person could find in favor of the plaintiff." Kosereis, 331 F.3d at 211. The crux of Maher's five-count complaint alleged that GSI violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, when Winston fired Maher for prematurely leaving the

-2-

meeting. Maher's ADEA claim is governed by the McDonnell Douglas burden shifting analysis, under which the plaintiff must first present a prima facie case of age discrimination. See Suarez v. Pueblo Intern., Inc., 229 F.3d 49, 53 (1st Cir. 2000). GSI challenges only the fourth prong of Maher's prima facie case, which requires a plaintiff to produce "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 10 (1st Cir. 2003) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)). To support the fourth prong of his prima facie case, Maher alleges that a person two years younger replaced him. The First Circuit, however, has held that a two year age difference "is insufficient to support even a prima facie case of age discrimination." Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 17 (1st Cir. 2001); see also Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000) (three year difference insufficient).

Even if Maher could present a prima facie case, he cannot show that GSI's non-discriminatory reason for his discharge, namely Maher's abrupt departure from the meeting, is a pretext for age discrimination. See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 (1st Cir. 2000). The only evidence offered by Maher is that in the Fall of 2001, he told Palmer that he was interested in interviewing for the job of Chief Operating Officer ("COO"), a new position that GSI was considering creating. During the conversation, Palmer said she was surprised that Maher was interested in the job because she expected him to retire in a few years. Winston made similar comments when Maher interviewed for the COO position.[1]

---

[1] Maher was not hired for the COO position because it was never created. None of Maher's claims are based on GSI's decision not to hire him as COO.

-3-

This evidence is insufficient to show that Winston's articulated reason for firing Maher was a pretext and that the real reason was age discrimination. To begin with, any comments made by Palmer are irrelevant because there is no evidence that she participated in Winston's decision to fire Maher. See Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 101 (1st Cir. 2002). As for Winston, his comments had nothing to do with the events surrounding Maher's firing; in fact, the comments were made roughly a year before Maher was terminated. See McMillan v. Mass. Soc. for Prevention of Cruelty To Animals, 140 F.3d 288, 301 (1st Cir.1998) ("[P]robativeness is circumscribed if [the remarks] were made in a situation temporally remote from the date of the employment decision, or if they were not related to the employment decision in question."). Lastly, and perhaps most important, it was Maher who first informed GSI during his initial interview in April, 2001, that he was considering retirement. See id. at 101 (employer's inquiries into plaintiff's retirement plans had no "significant probative value" because they were "brief, stray remarks unrelated to the termination decisional process"). In light of these facts, the comments made by Palmer and Winston were "stray workplace remarks" and not sufficient to establish pretext. See Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002). Maher's ADEA claim is dismissed.

Maher's two remaining federal claims seek damages for alleged violations of the Older Workers Benefit Protection Act ("OWBPA") amendments to the ADEA, 29 U.S.C. § 626(f). There is, however, no separate cause of action for damages available under the OWBPA. See Whitehead v. Okla. Gas & Elec. Co., 187 F.3d 1184, 1191-92 (10th Cir. 1999); E.E.O.C. v. UBS Brinson, Inc., 2003 WL 133235, 3 (S.D.N.Y. 2003) (collecting cases); Piascik-Lambeth v. Textron Auto. Co., Inc., 2000 WL 1875873, 5 (D.N.H. 2000) (collecting cases). Maher's OWBPA claims are dismissed.

Having dismissed Maher's federal claims, this Court declines to exercise supplemental jurisdiction over Maher's two state law claims. See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

III.   CONCLUSION

Maher's ADEA and OWBPA claims are dismissed. Maher's state-law claims are transferred to state court.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge