UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH MAHER,
    Plaintiff,

v.

GSI LUMONICS, INC.
    Defendant

CIVIL ACTION NO. 04-12367-EFH

**DEFENDANT GSI LUMONICS, INC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS ON THE GROUNDS OF *RES JUDICATA* AND/OR FOR SUMMARY JUDGMENT COUNTS I, II, AND IV OF THE COMPLAINT**

**I.**    **Introduction**

The instant matter is the second suit filed by the Plaintiff, Joseph Maher ("Maher"), against GSI Lumonics, Inc. ("GSI") arising out of termination of his employment. Such piece meal litigation is barred by the well established doctrine of *res judicata* and, in any event even if not barred, the claims asserted should be dismissed for the same reasons as this Court dismissed the federal counts on April 9, 2004. Such counts fail to state any claim on which relief can be granted. This Memorandum of Law is submitted in support of Defendant GSI Lumonic's, Inc. Motion For Summary Judgment on all counts of the Complaint.[1]

---

[1] Plaintiff has not yet served the individual defendant, Charles Winston, but he has agreed thorugh counsel to accept service subject to disposition of this motion. Count III relates to claims alleged against the individual Defendant.

506298    1

II.  **Procedural History**

In the first suit, Maher v. GSI Lumonics, Inc., Civil Action No. 03-10187-EFH (Maher I), this Court granted summary judgment in favor of GSI on April 9, 2004 on all federal counts.  See  Ex A to Concise Statement and Tab H hereto, (Memorandum and Order of the Court).   The Court, however, declined to exercise jurisdiction over the two state law claims, which alleged violation of the Massachusetts age discrimination statute (M.G.L. c. 151B) and violation of the "covenant of good faith and fair dealing" in connection with the severance negotiations.

After declining to exercise jurisdiction over the state law claims, Judge Harrington "transferred" the case to the Essex County Superior Court.  (Tab H Order at 5).  After a hearing on June 29, 2004, Judge Billings sitting in the Essex County Superior Court dismissed the case because the case was not properly before the Court.  Ex.  I (Order of Dismissal).  The case had not originated in the state court initially and could not be "remanded."

Thus, Plaintiff filed a second suit in state court on or about August 27, 2004, (Maher II).  The Complaint was served on Defendant GSI in or about October, 2004.   Based on this court's diversity jurisdiction, Defendant removed Maher II to federal court on November 8, 2004.

The Complaint  in Maher II asserts the following three state counts against GSI, his former employer: Count I, alleging age discrimination under state law,

506298                                    2

M.G.L. c. 151B; Count II, alleging Breach of the Covenant of Good Faith and Fair Dealing arising out of the severance negotiations; and Count IV, alleging an unspecified theory of "public policy", a non-existent tort in Massachusetts and a variation of Count II in connection with the severance negotiations. It is undisputed that such counts, or variations thereof, were asserted in Maher I. See *Joint Statement of the Parties* at 2 (Filed with the Court on January 4, 2005).

### III. STATEMENT OF FACTS[2]

Although more fully discussed in Defendant's Concise Statement of Material Facts, the undisputed facts are summarized below.

**A. Findings of the Court *Maher I.***

On April 9, 2004 the Court made the following findings of fact in its Memorandum and Order (Ex. A to the Motion for Summary Judgment and Ex H to Exhibits attached hereto) granting GSI summary judgment on the federal counts alleging violation of the Age Discrimination in Employment Act and the Older Workers Benefits Protection Act:

> The undisputed facts, considered in the light most favorable to Maher and with all reasonable inferences drawn in his favor, are as follows. See Kosereis v. Rhode Island, 331 F.3d, 207, 209(1st Cir. 2003). In April 2001, Maher applied for a job at GSI and was subsequently interviewed by the company's President, Charles Winston ("Winston"), and Vice President of Human Resources, Linda Palmer ("Palmer"). During the interview, Maher told Palmer that he was considering retirement and was not actively looking for a job. In May, 2001, Maher was hired as a General Manager of GSI's semiconductor division. Maher was 53 years old at the time. Winston was Maher's direct supervisor, and the relationship between the two men soon soured. In June, 2002, Winston wrote in Maher's

---

[2] Defendant also has submitted a Concise Statement of Material Facts as required by L.R. 56.1.

performance evaluation that he was concerned "over the poor working relationship between us." Palmer also spoke with Maher about the need to improve his relationship with the president.

On September 6, 2002, Maher attended a meeting with Winston and two other executives to discuss the semiconductor division. Winston participated in the meeting by telephone. Maher testified at his deposition that he "pretty much had enough that day" and decided to abruptly leave the meeting because Winston was giving "one of his soap-box presentations." The meeting ended when the two executives informed Winston that Maher had left. The next day, Winston decided to fire Maher and instructed Palmer to begin preparing a termination notice. Several days after the meeting, Maher wrote an e-mail to Winston apologizing for leaving the meeting. Maher stated: "I realize that I was totally out of line and let my emotions get the best of me. There is no good excuse for my abrupt departure from the meeting so I won't try to make any, I will only humbly ask that you accept my apology and my guarantee that it won't happen again." Winston fired Maher on September 13, 2002. Maher was 54 years old at the time. Maher was ultimately replaced by a person 52 years old.

B.  Severance Negotiations[3]

Discovery in Maher I also revealed the following additional facts regarding the severance negotiations. A Severance Offer was extended to Maher which allowed Maher 45 days for him to consider the offer, and seven days to revoke after signing. He was also advised to consult with counsel.

On September 18, 2002, Maher sent an email to Winston and Palmer requesting that the severance be increased from three to six months. Such demand was rejected. Palmer Tr., September 30, 2002 e-mail to Joseph Maher, *Exhibit 18* (Tab C). Maher had terminated people while employed by GSI, and admits that

---

[3] Solely for purposes of this Motion for Summary Judgment, the Defendant assumes that the facts stated herein are true and undisputed. Assuming such facts are true for purposes of this motion, judgment must be granted in Defendant's favor. Defendant also has submitted a Concise Statement of Material Facts as required by L.R. 56.1.

he is *not aware of any occasion* in which the Company had changed its original severance offer.  Maher Tr., 55, 58 (Tab A).

On September 18, 2002, Maher informed Palmer that he did not have the entire severance package, and Palmer faxed him another copy.  On September 30, 2002, Palmer assured Maher in writing that if he earned any bonus under the 2002 bonus matrix, it would be paid under the severance agreement after the year end audit was complete.  See Palmer Tr., September 30, 2002 e-mail string between Palmer and Maher, *Exhibit 18* (Tab C).   In accordance with the bonus plan, on March 7, 2003, Maher was paid a net bonus of $10,930.95.  Maher Tr., March 10, 2003 letter providing payment under incentive plan, *Exhibit 7* (Tab A).

On or before October 8, 2002, Maher retained legal counsel.   In response to Counsel's request, on October 16, 2002, GSI provided plaintiff's personnel file and other information to his counsel.  See Letter to Maher's counsel from GSI's in-house counsel, Bates-numbered document GSI 0050 (Tab F).

GSI's severance offer expired by its terms at the latest on November 4, 2002[4].  See Maher Tr., offer of severance, *Exhibit 11* (Tab A).  At all times prior to November 4, 2002, Plaintiff admits that he understood from Palmer, in writing, that if he earned any bonus, that it would be paid under the agreement.  See November 8, 2002 e-mail from Maher's counsel to GSI's in-house counsel, bates-numbered document GSI 0053 (Tab G).

---

[4] Based on either the initial September 13, 2002 offer or the September 18, 2002 re-fax of such offer, the 45-day period for accepting the severance offer expired earlier than November 4, 2002. For purposes of this Motion, however, Defendant will assume that the offer of severance expired on November 4, 2002.

506298                                                    5

By letter dated October 23, 2002 -- mailed to GSI -- Plaintiff's counsel requested an additional 45 days, from November 4, 2002 up to December 20, 2002, to consider the offer made to Maher on September 13, 2002. Plaintiff alleges that GSI did not respond to the letter or return his counsel's phone calls until <u>after</u> time for acceptance expired. Complaint Par. 28-33. Ultimately, **<u>GSI did not grant the request for extension</u>**. See Complaint Par. 37. Further, it is undisputed that Plaintiff did not accept the offer on or before November 4, 2002, prior to its expiration by its express terms. Maher Tr., 220 (Tab A). By so doing, in the absence of an agreed upon extension, he acted at his peril.

Further, **ONLY AFTER** such offer expired by its terms, GSI's counsel spoke with Maher's counsel and informed her that her interpretation was that the bonus would not be payable under the severance agreement. **See** Complaint Paragraph 35-36. At such time, GSI's counsel was unaware of the written assurances of Palmer, the Human Resource Manager, that any earned bonus would be paid. (Tab G). Maher's counsel brought Palmer's email to the attention of GSI's counsel, who agreed to speak with her client as to a short extension if Maher signed the severance as offered. (Tab G). No extension was granted, and Maher never signed the severance agreement. See Complaint Par. 37.

IV.   **ARGUMENT**

    A.   ***Maher II*** **Is Barred By The Doctrine Of *Res Judicata*.**

The instant suit is barred by the doctrine of *res judicata*. In <u>Kale v. Combined Insurance Company of America</u>, 924 F.2d 1161 (1st Cir. 1991), the First Circuit Court of Appeals upheld the District Court's dismissal of a civil action on res judicata grounds on facts virtually identical to those in the instant case. The Court posited the following question:

> When a state-law claim, originally brought pendent to a federal claim, is dismissed without prejudice for want of subject matter jurisdiction following rejection of the joined federal claim on the merits, under circumstances where the plaintiff could have asserted an alternative jurisdictional basis but did not, and the plaintiff thereafter brings a new suit against the same defendant which includes the pendent state-law claim as well as other state-law claims which could have pleaded in the initial suit; *quaere*: are the state-law claims in the second suit precluded by the original adjudication? <u>Id</u>. At 1165.

The Court answered such question in the affirmative, holding that "to avoid the onus of claim-splitting, [a plaintiff must] bring all related state claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists." <u>Id</u>. at 1165. The Court relied upon Seventh Circuit precedent in <u>Shaver v. F.W. Woolworth Co.</u>, 840 F.2d 1361 (7th Cir.), *cert denied*, 488 U.S. 856 (1988) (Finding second suit on state law claims barred when plaintiff failed to allege alternative jurisdictional basis in his attempt to pursue state law claims in original suit). <u>Id</u>. At 1166.

As in the instant case, the plaintiff, Kale, a citizen of Massachusetts, filed suit against his former employer, Combined Insurance, a "citizen" of Illinois.

Just as Maher did in the instant case, Kale asserted a claim under the Age Discrimination in Employment Act, as well as various state law claims including violation of the implied covenant of good faith and fair dealing. After dismissing the federal age claim under the ADEA, the court declined to exercise jurisdiction over the state law counts over which the court believed itself to have only pendant jurisdiction. Also, as in the instant case, the Plaintiff did not alert the court or make any effort to assert the presence of diversity jurisdiction which would have allowed the court to maintain jurisdiction over the state law counts.

Instead, the plaintiff in Kale – as did Maher ultimately -- filed a new suit in state court re-asserting the state law claims.[5] With diversity apparent from the face of the record in the second action, the defendant removed the case to federal court, and then moved to dismiss the action based on the preclusive effect of the first suit. Such procedural course is identical to the instant case and to Shaver on which the Court relied in Kale.

Clearly, the Court had every right to dismiss the state-law claims without prejudice on the record in *Maher I* once the federal claims were resolved on the merits. Kale at 1164. Moreover, it is undisputed that the judgment for GSI in Maher I was rendered by the court acting under its federal question jurisdiction, as in Kale. Thus, on such facts, the availability of the *res judicata* defense depends on the federal law standard. Kale at 1164. As the First Circuit in Kale stated:

---

[5] In the instant case, the court attempted to "remand" Maher I and the Plaintiff failed to make the Court aware that the case had no originated in the state court. Because there was no basis for remand, the Court in Maher I should have dismissed without prejudice as the Court did in Kale. Thus, procedurally, Maher's filing of the new suit in state court is identical to the facts in Kale.

> Once there has been an adjudication on the merits, federal law stipulates that all claims which are part of the same cause of action are extinguished, whether or not actually asserted in the original action. Id. at 1164.

According to the First Circuit, the :

> Doctrine of res judicata, in its federal formulation, insists that the decision in [Maher I] must preclude in a subsequent suit (1) all claims which were actually brought in [Maher I] and (2) all related claims, i.e., all claims arising out of the same cause of action. Id. at 1165.

All elements of claim preclusion are present in Maher. First, clearly, there was a final judgment on the merits in Maher I. (Ex. A of Concise Statement; Tab H of Exhibits). Second it is undisputed that the causes of action are identical. See *Joint Statement of the Parties* at 2 dated January 4, 2005. Finally, the parties are the same in the two actions.

Thus, because Plaintiff knew of the existence of the diversity jurisdiction in Maher I, but chose not to assert it, this was his choice and his choice alone that led to the Court's order. As the Court found in Kale, the plaintiff in *Maher I* had a full and fair opportunity to litigate, therefore the second suit is barred by the doctrine of res judicata. Id. At 1168. For these reasons, Maher II must be dismissed.

**B.** ***COUNT I:* Mr. Maher's Claim For Age Discrimination In Violation Of M.G.L. c. 151B Must Be Dismissed for the Same Reasons the Court Dismissed the Federal Claim under the ADEA.**

1. The Plaintiff has not and cannot state a prima facie case.

As found by the Court in *Maher I*, Plaintiff was hired at age 53, and terminated sixteen *months* later at age 54. The decision-maker for the hire and the termination was the president of GSI, age 61. Plaintiff was replaced by Nino Federico, age 52. Such facts fail to establish even a prima facie case of age discrimination under MGL c. 151B. Tab H (Order Maher I at 3).

In order to establish a *prima facie* case of age discrimination under state law, as under federal law, Maher must establish the following: (1) that he was a member of a protected class; (2) that he was qualified for the position; (3) that he was terminated; and (4) that he was replaced by a younger individual in the same position. See Blare v. Huskey Injection Molding Systems, Boston, Inc., 419 Mass. 437, 441 (1995); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993).

In Maher I, this Court found that Maher failed to satisfy the fourth element of the *prima facie* case. Plaintiff alleges that he was replaced by Nino Federico (age 52), the Operations Manager who referred Maher to GSI. The age difference between Federico and Maher was **only two years** – such *de minimis* age differential is insufficient *as a matter of law* to support a *prima facie* case of age discrimination. In accord with federal law, the Massachusetts Supreme Judicial Court recently held that even five-year age differential – two and half times the difference in the instant case -- was insufficient to support a prima facie case of age discrimination. Knight v. Avon Products, 438 Mass. 413 (2003).

Thus, this Court's earlier Order granting GSI Summary Judgment on the ADEA count compels that judgment be entered for GSI as a matter of law on Count I in Maher II.   Plaintiff has not and cannot proffer any facts to state even a *prima facie* case of age discrimination.

> **2.    Even If Maher Could Establish A Prima Facie Case, Which He Cannot, He Cannot Show That Defendant's Articulated Reason Is A Pretext For Age Discrimination.**

As found by the Court in *Maher I,* assuming *arguendo* that Mr. Maher could establish a *prima facie* case, Summary Judgment should nevertheless be granted in Defendant GSI's favor as Maher cannot, as he must, proffer facts to satisfy his burden of establishing the Defendant's articulated reason is a pretext for age discrimination.  (Ex. H at 3-4); See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997); Blare, 419 Mass. at 444-45.  See also Miner v. Connleaf, Inc., 998 F. Supp. 40 (D. Mass. 1997) (citing Matthews, 426 Mass. at 128) (even under a "pretext only" standard, plaintiff must show at least some evidence linking the pretext to the discrimination).  As found in *Maher I*, Maher can offer no facts to show that age was a factor in his termination.  Maher Tr., 236 (Tab A).  As this Court found in Maher I, Plaintiff was terminated for his rudeness when he abruptly walked out of a meeting with the President.  In fact, Maher himself stated on September 10, 2002 that he was:

> "totally out of line and let [his] emotions get the best of [him].  There is no good excuse for my abrupt departure from the meeting, so I won't try to make any."

See e-mail Bates-numbered GSI 0340 (Tab E).

The close proximity between the hiring and the discharge of a person in a protected class by a person in such class – who, in this case, is older than Plaintiff – dispels any inference of discrimination.  Chiaramonte v. Fashion Bed Group, Inc., a Division of Leggett & Platt, Inc., 129 F.3d 391 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118, 118 S.Ct. 1795 (hiring employee at 52 years and terminating same employee at 57 years dispels any presumption of age discrimination); Lowe v. J.B. Hunt Trans., Inc., 963 F.2d 173, 175 (8th Cir. 1992)

> "It is simply incredible… that the company officials who hired [the plaintiff] at age fifty-one had suddenly developed an aversion to older people less than two years later."

See also Vaughn v. Roadway Express, Inc., 164 F.3d 1087 (8th Cir. 1998) (citing above quoted language from Lowe); Ragland v. Rock-Tenn Co., 955 F.Supp. 1009, 1022 (N.D. Ill. 1997) (strong inference of non-discrimination exists where plaintiff was hired and fired by same person within short period of time).

Since GSI has articulated a legitimate non-discriminatory reason for terminating Maher, the burden is squarely upon Mr. Maher to establish that GSI's articulated reason is a pretext for discrimination.  Matthews, 426 Mass. at 128. Any presumption of discrimination that may have arisen from Maher's attempt at establishing a *prima facie* case vanishes once GSI articulates legitimate non-discriminatory reasons for its actions.  Matthews, 426 Mass. at 128; LeBlanc, 6 F.3d at 845.   In the instant case, Summary Judgment must be granted for Defendant, as in Maher I, because  the record is **devoid of any direct or circumstantial evidence** which could reasonably allow a jury to conclude that

Maher – hired by GSI at <u>age 53</u> and terminated <u>at age 54</u> by the President (age 61) – was terminated due to Maher's age, rather than the act of insubordination on September 6, 2002 for which even Maher admits he can offer "no good excuse." <u>Matthews</u>, 426 Mass. at 128 ("[t]he plaintiff bears the burden to produce sufficient evidence to support a jury verdict that . . . the articulated reason was pretext for actual discrimination.").

In the instant case, Maher cannot avert Summary Judgment on Count I. "Even under this pretext-only standard, a plaintiff must show at least some evidence linking the pretext to discrimination." <u>Miner</u>, 998 F. Supp. at 40. Summary Judgment, therefore, should be entered for GSI on Count I alleging age discrimination in the termination decision since, the evidence, in its entirety could not permit a reasonable fact finder to infer that GSI's decision to terminate Maher was based on discriminatory animus as this Court found in <u>Maher I</u>. <u>Id</u>.

    **C.** **Count II Fails As A Matter Of Law As Plaintiff Has Not And Cannot Proffer Any Facts To State A Claim For Violation Of The Covenant Of Good Faith And Fair Dealing. There Is No "Contract" On Which To Base Such Claim And Such Covenant Is Not Implied Into "Negotiations."**

In Count II, the Plaintiff reasserts a count for Breach of the Covenant of Good Faith and Fair Dealing. Such count also must fail as a matter of law.

It is hornbook law in Massachusetts that to state a claim for breach of the covenant of good faith and fair dealing implied in any contract, the Plaintiff must show that there existed an enforceable contract between the parties. <u>Petricca v. City of Gardner</u> 194 F. Supp. 2d 1, 5 (D. Ma 2002); <u>Laser Labs Inc. v. ETL</u>

506298                                13

Testing Labs, 29 F. Supp. 2d 21, 24 (D. Mass. 1998).  In the instant case, plaintiff has not and cannot plead existence of any enforceable contract, an essential element of such claim.

It is patent from the record that there existed NO contract between the parties – there was a severance offer, valid for 45 days,  which Plaintiff did not accept, and which expired by its own terms.  In the absence of an enforceable contract, judgment must be entered in the Defendant GSI's favor.  Petricca, 194 F. Supp. 2d. at 5; Laser Labs, 29 F. Supp. 2d. at 24.  Efforts to extend the covenant of good faith and fair dealing to the "negotiation" of contracts, as Plaintiff attempts to do here, have failed in Massachusetts.  Levenson v. LMI Realty Corp., 31 Mass. App. Ct 127, 131 (1991).

In Levenson, the Massachusetts Court of Appeals upheld dismissal of a lawsuit based on facts virtually identical to those alleged by Maher in the instant matter.  In rejecting such cause of action as applied to "negotiations in good faith," the Court stated that the covenant of good faith and fair dealing had "no application" because, as here, there was no contract into which such covenant could be implied.[6]  Id. In Levenson, as stated above, the Massachusetts Court of

---

[6] Plaintiff also has not and cannot allege violation of the covenant of good faith and fair dealing implied in at-will employment contracts.   To state such a claim, Plaintiff would have to allege that the employer **terminated** him for the purpose of depriving him of money that he fairly earned and legitimately expected. Sand v. Ridefilm Corp., 212 F.3d 657, 663 (1st Cir 2000). Efforts to extend the doctrine to other claims of generic "good faith" or "fairness" have failed. See Frankina v. First National Bank of Boston, 801 F. Supp. 875, 884, aff'd, 991 F. 2d 786 (D. Mass 1992) (absence of good faith without more will not trigger liability).  Further, any remedy under such theory is limited to loss of compensation clearly owed for past services. Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115, 1125 (1st Cir. 1995) (good faith and fair dealing does not

Appeals refused to imply such obligations into "negotiations in good faith." Such precedent is binding on this court sitting in diversity which applies the law of the State, rather than expands Massachusetts law or policy.

Although Plaintiff at oral argument in Maher I attempted to assert that there was an "oral contract" to consider the extension request, such statement by counsel to present a request of an opposing party to her client falls far short of a "contract." See, Ex G for text of email conversation after time for acceptance of the severance expired. As a matter of hornbook law, a contract requires an offer, acceptance and consideration. Clearly, even assuming arguendo that there was an offer and acceptance, there was no legal consideration which is required to form a contract. In any event, it is undisputed that she did present such request to her client – who rejected the demand.

> D.    **Count IV Must Be Dismissed as There is No Such Cause of Action in Massachusetts for "Violation of Public Policy"**

Plaintiff's Count IV captioned "Violation of Public Policy" fails to articulate any recognized cause of action in Massachusetts.[7] It purports to be a derivative of Count II, violation of good faith and fair dealing, in which Plaintiff seeks to make new law implying good faith into contract negotiations.

---

encompass situations where plaintiff was fired arbitrarily). It is undisputed that Plaintiff was paid all monies to which he was entitled for past services. Claims to severance would not be cognizable under the good faith and fair dealing covenant in employment contracts as such claim does not apply to future expectancies. Chilson v. Polo Ralph Lauren Retail Corp., 11 F. Supp. 2d. 153, 158 (D. Mass. 1998).

[7] As stated in note 6 above, while such claim has been recognized as a theory in wrongful discharge litigation where an at-will employee is discharged for an action in favor of public policy, there is no generally recognized tort of "violation of public policy" in Massachusetts.

In <u>Levenson,</u> as stated above, the Massachusetts Court of Appeals refused to imply such obligations into "negotiations in good faith." Such precedent is binding on this court sitting in diversity which applies the law of the State, rather than expands Massachusetts law or policy.

Thus, such Count must be dismissed for failure to state any claim on which relief can be granted.

## V      Conclusion

For all the foregoing reasons, the instant suit is barred by the doctrine of res judicata and must be dismissed. In the alternative, summary judgment must be entered in favor of GSI as a matter of law on all counts.

          Respectfully submitted,

          **GSI LUMONICS, INC.,**

          By its attorneys,

          __/s/ Debra Dyleski-Najjar_____
          Debra Dyleski-Najjar, BBO #366730
          Doreen M. Zankowski, BBO #558381
          HINCKLEY, ALLEN & SNYDER LLP
          28 State Street
          Boston, MA 02109
          Phone: (617) 345-9000

Dated: February 7, 2005

**CERTIFICATE OF SERVICE**

I, Debra Dyleski-Najjar Esq., hereby certify that on the 7th day of February, 2005, I caused a copy of the foregoing to be served electronically, on Martha Wishart, Esquire via ECF.

          _____/s/ Debra Dyleski-Najjar_____
          Debra Dyleski-Najjar